A deliberate and admitted fraud, arising from gross misstatements of fact concerning his true financial condition, induced the plaintiff lending institution, on March 23, 1931, to loan the defendant the sum of $720. In his application for this loan the defendant represented himself as being free from outstanding "judgments, garnishments and other legal proceedings" and detailed his total debts as $300. Some measures of his wilfulness may be drawn from the fact that when these representations were made he was then indebted to Chisholm and Chapman, by reason of a judgment entered in the State of New York on January 8, 1931, in the sum of $1,361.20; to United States Fidelity and Guarantee Company, by reason of a judgment entered in the State of New York on January 27, 1931, in the sum of $201.45; to White Plains City and Suburban Pine and Oak Mills, Inc., by reason of a judgment entered in the State of New York on January 23, 1930, in the sum of 403.81; and to several other judgment creditors by reason of New York judgments aggregating an additional $1,000.
Thus, without any intimation of this elaborate and conscious scheme to mislead, the plaintiff, relying upon the deceptive application, approved the loan and paid over the funds, at the same time requiring the defendant to execute a typical promisory note. By the terms of this note, its first of 12 instalment payments fell due on April 23, 1931. This *Page 479 
payment was not met by the defendant until June 9, 1931, when, after considerable urging, he reduced the obligation by $60. Thereafter no further payments were made by him.
In as much as the transaction had been consummated in the State of New York and in as much as the obligation was in complete default, the plaintiff, in the latter months of 1931, instituted action against the defendant in the New York courts wherein was entered, on December 22, 1931, a judgment against him in the principal sum of $660 with accrued costs of $39.50. No part of this judgment, save $70, ultimately secured from a co-maker whose signature had been required as a condition precedent to the loan, has been paid.
Following the entry of judgment, executions were issued on two occasions, both being returned wholly unsatisfied. Thereafter, in 1934, the defendant was served with a show cause order, citing him to appear for examination in supplementary proceedings, a New York device designed to assist in the location of assets. This formal inquiry was conducted with the defendant under oath, on September 21, 1934, by an examining attorney of the plaintiff corporation, and, as might be expected, revealed nothing in the way of assets. However, among the many questions propounded during this examination, the following significant ones were asked of and answered by the defendant:
Q. "Do you own a house?"
A. "No. My wife did own property at 82 Bank Street, White Plains, and also home, at 16 Lafayette Street, white Plains. Both properties foreclosed in 1931."
Q. "Have you any judgments against you?"
A. "About $5,000. Judgments held by various contractors and builders arose out of work done on the property owned by my wife which was foreclosed."
Frustrated in his quest for assets, the plaintiff's examining attorney took no further steps toward satisfying the judgment, permitting the defendant's examination to stand unchallenged, unverified and unquestioned.
Thus the matter rested until January 25, 1939, when the defendant filed in the District Court of the United States for the Southern District of New York, a voluntary petition in *Page 480 
bankruptcy, listing, among liabilities, not only the plaintiff's judgment, but all the judgments which were outstanding and concealed at the time of the loan. In September, 1940, that court granted the defendant a discharge in bankruptcy.
On May 18, 1943, the pending Connecticut litigation was instituted, detailing, as it does, the making of the loan to the defendant on March 23, 1931; the fraudulent circumstances under which the loan was made; and the names of the judgment creditors to whom the defendant was indebted on March 23, 1931, and whose identities were fraudulently concealed from the plaintiff. The plaintiff now seeks to recover the unpaid balance of its loan with accrued interest. Its complaint sounds in fraud; it is not suing on the New York judgment.
To this fraud action, the defendant has offered a number of defenses, particularly stressing the operation of the Statute of Limitations of the State of New York as a bar to recovery. Subdivision 5 of section 48 of the New York Civil Practice Act provides that an action to procure a judgment on the ground of fraud must be commenced within six years after the cause of action has accrued and that the cause of action in such a case is not deemed to have accrued until the discovery by the plaintiff, or the person under whom he claims, of the facts constituting the fraud. Talmadge vs. UnitedStates Shipping Board, etc., 54 F.2d 240, 243, in construing the above section, holds: "It is enough under section 48(5) that the victim of the fraud shall be put on notice of the practice upon him; he need not know the full details."
A determination of the date on which the plaintiff knew, or in the exercise of reasonable diligence should have known of the defendant's fraudulent "practice upon it", seems to constitute a fundamental necessity.
The plaintiff, on the one hand, contends it was unaware of the defendant's fraud until he filed his bankruptcy schedules detailing dates and amounts of the judgments which antedated its loan. This filing, of course, was in 1939. Therefore, says the plaintiff, this action has been seasonably brought within the six-year period, since the fraud was not discovered until 1939 and since this action was instituted in 1943.
On the other hand, the defendant argues that in 1934, during the New York supplementary proceedings, he, while under *Page 481 
oath, disclosed outstanding judgments against himself in the amount of $5,000. Further, says the defendant, he disclosed that these judgments had their roots in services rendered and materials furnished him in connection with his wife's properties. Likewise the defendant points to his statement, during the supplementary proceedings, that the titles to his wife's properties had been foreclosed in 1931. Thus, it is argued, since the disclosed judgments arose out of construction and building operations on the properties of Mrs. Richards and since titles to those properties had been foreclosed in 1931, it must have been obvious that the judgments preceded the foreclosures and, in all likelihood, preceded the application for loan. Briefly, then, the defendant claims that in 1934, during his examination by the plaintiff's attorney, he made admissions and disclosures, which, if pursued with reasonable diligence, would or should have brought his 1931 deceit to light.
The defendant's position is persuasive. One cannot escape the conviction that had the plaintiff, after the defendant's examination in 1934, analyzed and dissected its results, then, most certainly, it could and should have known of the judgments which antedated its loan. Thus, had it employed ordinary diligence and vigilance, the defendant's fraud would and should have been readily detected and a fraud action seasonably pursued.
In 1934, when the defendant was confronted with the necessity of testifying under oath, it is apparent he then determined to spread the true facts on a formal record. The deceit and fraud, which had characterized his application for loan, vanished. In their stead appeared an open and frank disclosure of outstanding judgments aggregating $5,000.
The very considerable amount of the judgments; the fact that they flowed from construction operations on Mrs. Richard's properties; the fact that these properties had been foreclosed in 1931; the fact that the loan to the defendant had been made in 1931; the reasonable inference that the judgments, by their very nature, undoubtedly preceded the foreclosure actions; the definite possibility that the judgments antedated the defendant's loan — all these factors and circumstances were sufficient to apprise the plaintiff of the likelihood of fraud by the defendant when he applied for and received his loan. Had these circumstances and disclosures been viewed critically there is no question but that the defendant's fraud *Page 482 
would or should have been readily detected. Inattention, indifference, inertia, as you please, caused the plaintiff to refrain from pursuing the information at its disposal. Thus, since it should have discovered the defendant's fraud in 1934 and since it remained inactive until 1943, the New York Statute of Limitations, if applicable, has operated to bar its recovery.
The defense to this action has been predicated primarily on the claimed operation of the New York Statute of Limitations. In addition, however, the defendant, as a special defense, has pleaded section 1677c of the 1935 Cumulative Supplement to the General Statutes, superseding section 6006 of the General Statutes, Revision of 1930, and providing: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."
Statutes of limitations are viewed, generally speaking, as pertaining to the remedy only. Thus, "the period of limitation of actions of the forum will be looked to in determining whether the plaintiff's action is barred by lapse of time, not the law where the cause of action arose." Goodrich, Conflictof Laws (2d ed. 1938) § 82. To the same effect, see 3 Beale,Conflict of Laws (1935) § 603.1.
I prefer to consider the Connecticut Statute of Limitations as having application to the matter. If the plaintiff is to prevail in this forum, its action was required to have been brought "within three years from the date of the act .... complained of." Assuming for a moment that the plaintiff did not detect the defendant's fraud until 1939, when he filed his bankruptcy schedules, it then was required, within three years thereafter, to institute its fraud action in Connecticut. The period of limitation of the forum will be looked to in determining whether the plaintiff's action is barred by lapse of time. Not having commenced its suit within this statutory period, the action is barred by operation of the law of the forum.
Thus it would seem to be academic as to whether the New York or Connecticut Statute of Limitations is applied. In either event the plaintiff cannot prevail.
 Judgment may enter for the defendant to recover of the plaintiff his costs.